Adoue & Lobit v. Sylvain Blum.

No. 452.

1. **Equitable Assignment of Funds.**—Weiss was indebted to both the appellant and appellee, and had bonds in the hands of a New York bank. On August 30, 1889, he wired the bank to sell his bonds, and remit the balance due him to Adoue & Lobit. Galveston, and on the same day wired Adoue & Lobit to protect his drafts, that he had ordered remittance from New York. The bank sold the bonds September 6, and wired Weiss that they had placed the balance to his credit, but did not send the money to Adoue & Lobit as ordered. In suit between Blum and Adoue & Lobit, *held*, that the instructions given by Weiss to the bank, and the telegram from Weiss to Adoue & Lobit, did not constitute either a legal or equitable assignment of the funds to them. Following Wallis, Landes & Co. v. Taylor, 67 Texas, 431; and Alliance Milling Company v. Eaton, Guinan & Co., 86 Texas, 401.

2. **Agreement Between Creditors.**—Blum and Adoue & Lobit agreed that the latter should institute whatever legal proceedings were necessary, and that whatever money should be realized from Weiss should be divided between them. Blum discovered that Weiss had a deposit in a New York bank, and informed Adoue & Lobit, who sued for it, and as the result, by agreement between Blum, Adoue & Lobit, and the bank, the funds were turned over to Adoue & Lobit. *Held*, that Blum was entitled to one-half of this fund, after the costs of suit and attorney fees were paid out of it.

ERROR from Galveston.    Tried below before Hon. WM. H. STEWART.

*McLemore & McLemore*, for plaintiffs in error.—1.  Adoue & Lobit allege and claim that Blum should not be allowed to recover the amount sued for, as, although the particular sum sued for is mentioned in the agreement between the parties, it was discovered afterward that that particular sum was not the property of J. Weiss or the Texarkana Savings Bank, but had been transferred and assigned by Weiss prior to the date of the agreement, and was in fact to the credit and the property of Adoue & Lobit at the date of said agreement, and not subject thereto.  Although on August 30, 1889, Weiss had no funds in the Merchants Exchange National Bank in New York, yet the telegram to said bank of that date to sell and remit proceeds to Adoue & Lobit was an equitable transfer and assignment of the funds to be derived from the sale of the bonds in the hands of said bank.   Hobson v. Trenor, 2 P. Wms., 191; Taylor v. Palmer, 31 Cal., 240; Jenkins v. Stetson, 9 Allen (Mass.), 128; Hannon v. Christopher, 34 N. J. Eq., 459; Dunham v. Railway, 1 Wall., 268; Lansden v. McCarthy, 45 Mo., 106; Groot v. Story, 41 Vt., 533.

2.  In order to constitute a valid assignment of a debt or other chose in action in equity, no particular form of words is necessary; any words are sufficient which show an intention of transferring or appropriating the chose in action to the assignee.   Garnsey v. Gardner, 49 Me., 167; Thompson v. Spies, 13 Sim., 469; Cook v. Black, 1 Hare, 390; Row v. Dawson, 1 Vesey, 331; Burn v. Carvallio, 4 N. Y. and Cr., 690.

3.  The court erred in holding that the telegram from Weiss to the Merchants Exchange National Bank, of date August 30, 1889, did not transfer and assign the funds in said bank derived from the sale of the said bonds, and said money had not passed to the credit of Adoue & Lobit at the date of the agreement between these parties.   East Lewisburg L. & M. Co. v. Marsh, 91 Pa. St., 96; Clark v. Mauran, 3 Paige, 373; Walker v. Mauro, 18 Mo., 564; Blin v. Pierce, 20 Vt., 25; Caldwell v. Hartupee, 70 Pa. St., 74; Munger v. Shannon, 61 N. Y., 251.

*Scott, Levi & Smith*, for defendant in error.—The funds collected by Adoue & Lobit from the Merchants Exchange Bank in New York belonged, at and before the date of such collection, to the debtor, J. Weiss, and as such were received by Adoue & Lobit on account of their claim against J. Weiss, and under the agreement between Adoue & Lobit and Sylvain Blum was subject to division between them, that is to say, one-half to Adoue & Lobit and one-half to Sylvain Blum, and in the judgment of the court below to that effect there was no error.   Kimball v. Donald, 64 Am. Dec., 209; Bank v. Bogy, 100 Am. Dec., 247; Chapman v. White, 57 Am. Dec., 464; 3 Pome. Eq. Jur., secs. 1281, 1282, 169;

Wallis, Landes & Co. v. Taylor, 67 Texas, 434; see, also, Milling Co. v. Eaton, Guinan & Co., 86 Texas, 401.

PLEASANTS, ASSOCIATE JUSTICE.—The question presented by this appeal for our decision is whether or not the defendant in error should, under a contract between him and the plaintiffs in error, recover of the latter one-half of a sum of money found on deposit in a New York bank to the credit of one J. Weiss, and which was paid out to said plaintiffs · upon their obligation to the bank to protect it against Weiss.

The facts, as we deduce them from the record, are as follows:  J. Weiss was a resident of Texarkana in September, 1889, and was doing business under several firm names, and among others that of "The Texarkana Savings Bank."   He was indebted by note to Sylvain Blum in the sum of $9000, and was also largely indebted to Adoue & Lobit.   On the 20th of September, 1889, Blum and Adoue & Lobit agreed that whatever sums of money either should collect from the common debtor, the said Weiss, should be for their joint account, Blum to have one-half and Adoue & Lobit the other.   Blum, for some reason, did not desire to appear in any legal proceedings which it might be necessary to institute, and transferred his claim of $9000 to Adoue & Lobit.   Blum discovering that there was on deposit in the Merchants Exchange National Bank of New York, to the credit of Weiss, the sum of $1584.05, gave this information to Adoue & Lobit, and the latter instituted suit against the bank for the purpose of subjecting the funds to the payment pro tanto of their debt and that of Blum's.   The suit was afterwards dismissed, and by an agreement between the plaintiffs, Adoue & Lobit, and the bank, the money held by the latter on account of Weiss was turned over to Adoue & Lobit, upon their executing an indemnifying bond to the bank.   Adoue & Lobit refusing to divide the money so received with Blum, he instituted suit against them for the recovery of one-half of $1584.05, less attorney fees and costs of the suit instituted by Adoue & Lobit against the bank.   On August 30, 1889, twenty-one days before the agreement between Blum and Adoue & Lobit was made, Weiss wired the Merchants Exchange Bank as follows:  "Sell all bonds and remit balance due me to Adoue & Lobit, Galveston, Texas."   On the 6th of September the bank wrote to Weiss as follows:

"NEW YORK, September 6, 1889.

"*J. Weiss, Esq., President, Texarkana, Texas:*

"DEAR SIR—Our broker has at last succeeded in selling the San Antonio & Aransas Pass Railroad bonds, in accordance with your instructions.

8000 S. A. & A. P. 1st 6's, 1916, at 80.....................$6,400 00

Broker's commission...............................................  10 00

$6,390 00

Your note of ...............................$5,000 00

Less payment ...............................  194 05—   4,805 95

Balance...........................................................$1,584 05

which has been credited to your account, and I return notes herein, cancelled.

         " Very respectfully,

                          "A. P. APGAR."

This letter was delivered by Blum to Adoue & Lobit prior to the institution of their suit against the bank. When they contracted with Blum for a division of any sums they might recover from Weiss, Adoue & Lobit do not seem to have known that there was any sum in said bank to Weiss' credit. On August 30, 1889, Weiss wired them from Texarkana as follows: " Protect drafts; have ordered remittance from New York." But no remittance was made them, nor does it appear that any communication was had by Adoue & Lobit with Weiss subsequent to receipt of his telegram of August 30, 1889, or that the bank made any communication to them touching the subject matter of litigation prior to the institution of the suit against the bank. Nor does it appear from the evidence why the bank retained the balance due to Weiss, instead of transmitting the same, as he directed them to do, to Adoue & Lobit.

Upon trial of the cause the District Court of Galveston County rendered judgment, in accordance with the prayer of his petition, for plaintiff Blum, and the defendants, Adoue & Lobit, appealed. The defendants denied the plaintiff's right to any portion of the sum received by them from the New York bank, upon the ground that at and before the agreement between them and Blum the money on deposit in the bank had been assigned and transferred to them.

The District Court held that the mere instructions given to the bank to transmit the balance due him to Adoue & Lobit, and the telegram of the same date as the instructions from Weiss to Adoue & Lobit, did not constitute either a legal or equitable assignment of the funds to Adoue & Lobit; and in this we fully concur. We think this question is settled by the decision rendered by the Supreme Court of this State in the case of Wallis, Landes & Co. v. Taylor, 67 Texas, 431. The judgment of the same court in its recent decision in Austin, in the case of the Alliance Milling Company v. Eaton, Guinan & Co., 86 Texas, 401, is to the same effect. The funds in the bank at the time of the institution of Adoue &

Lobit's suit were subject to the control of Weiss, and were therefore subject to garnishment at the suit of Blum, or any other creditor of Weiss.

There is no error in the judgment, and the same is affirmed.

*Affirmed.*

Delivered February 15, 1894.